IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 8:07CR226 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| JASON M. RILEY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Jason M. Riley's (Riley) Motion to Suppress (Filing No. 12). Riley is charged with the possession of firearms while under Indictment for crimes punishable by imprisonment exceeding a year, in violation of 18 U.S.C. § 922 (n) **See** Filing No. 1. The charge arises from a traffic stop involving Riley on June 7, 2007, and the seizure of two firearms found in Riley's vehicle. Riley seeks to suppress any evidence or statements obtained from Riley as a result of the traffic stop on June 7, 2007. Riley contends the initial traffic stop was not supported by probable cause, his consent was not valid, and his statements to law enforcement were unsupported by *Miranda* warnings, were involuntary, and the fruit of an unlawful seizure.

The Court held an evidentiary hearing for the motion to suppress on August 29, 2007. At the hearing, the Court heard the testimony of Omaha Police Department (OPD) Officers Terrence G. Cabral (Officer Cabral), Jason Kennedy (Officer Kennedy), and Thomas Loftus (Officer Loftus). The Court received into evidence a copy of the rights advisory form that was utilized on June 7, 2007 (Exhibit 1). A transcript (TR.) was prepared and filed in this matter on August 29, 2007. **See** Filing No. 21. The parties did not file post-hearing briefs in this matter.

**FINDINGS OF FACT**

Officer Cabral is employed with the city of Omaha as an Omaha Police Officer in the Uniform Patrol Bureau (UPB) and has worked for the OPD in this capacity for 16 months (TR. 3-4). Officer Cabral was working as an Omaha Police Officer on June 7, 2007 in the southwest precinct on the "C" shift. (TR. 4). The southwest precinct includes the area from Dodge Street to the north, Harrison to the south, the river to the east, and 42nd Street to

the west (TR. 4).  The "C" shift starts at 3:40 p.m. and ends 10 minutes after midnight (TR. 4).  Officer Kennedy has been employed with the OPD for two-and-a-half years for the UPB (TR. 31).  Officer Kennedy is assigned to the southeast precinct and was working in that area on June 27, 2007 at approximately 8:00 p.m. (TR. 31).

On June 27, 2007, at approximately 8:00 p.m., Officers Cabral and Kennedy received a radio dispatch asking them to proceed to the area of 27th and Poppleton to check a complaint of reckless speeding (TR. 4-5,TR. 32).  The radio dispatch indicated that a reckless driver in a red Monte Carlo was in that area doing donuts[1] in the road (TR. 32).  Officer Kennedy and Officer Cabal went to the scene in separate vehicles (TR. 5).  Upon arrival to the scene, Officer Cabral saw four people on the corner of 27th and Poppleton (TR. 5).  Officer Kennedy spoke with the people (TR. 6).  Officer Kennedy said the people stated they saw a red Monte Carlo with white stripes and they pointed to circular tire marks in the street (TR. 32).  Officer Kennedy checked the tire marks and determined a vehicle had been doing donuts in the street (TR. 33).

After speaking with the witnesses, Officers Kennedy and Cabral searched the area for a vehicle fitting the description given by the witnesses (TR. 33).  After searching the area, Officer Cabral parked his cruiser between 25th and 26th Streets to complete his daily report (TR. 7).  As Officer Cabral was writing his daily report, he heard an engine motor approaching at a high rate of speed and saw a red vehicle go by on the street (TR. 7-8).  Officer Cabral said about eight or nine minutes had elapsed since the time he left the area of the original dispatch to the time he observed the red vehicle speed past him (TR. 11).  Officer Cabral estimated the vehicle was traveling at a rate of about 50 miles per hour in a residential area where the speed limit is 25 miles per hour (TR. 8).  Officer Cabral radioed Officer Kennedy and said he (Officer Cabral) was going to intercept the vehicle (TR. 9).  Officer Cabral encountered a red Monte Carlo with a white stripe stopped on the corner of

---

[1] "A doughnut or donut is a maneuver performed while driving a vehicle.  Performing this maneuver entails rotating the rear or front of the vehicle around the opposite set of wheels in a continuous motion, creating (ideally) a circular skid-mark pattern of rubber on a roadway and possibly even cause the tires to emit smoke from friction . . . .  Performing the doughnut maneuver can be hazardous.  Strain is placed on the vehicle's suspension and drivetrain, which may result in mechanical breakdown with loss of control. Tires are also subject to severe wear which may result in a sudden loss of pressure or 'blow out'." Wikipedia, The Free Encyclopedia, http://en.wikipedia.org/wiki/Doughnut(driving) (last visited September 26, 2007).

25th and Poppleton (TR. 10). Officer Cabral stopped his vehicle nose to nose with the red Monte Carlo (TR. 20).

Officer Cabral notified Officer Kennedy of his location (TR. 11). While waiting for Officer Kennedy to arrive, Officer Cabral approached the left front driver's side of the vehicle and instructed the driver to show his hands (TR. 11-12, 20). Riley was the driver and sole occupant of the vehicle. Officer Kennedy arrived and approached the vehicle from the right side around the back of the vehicle (TR. 12, 20). Officer Kennedy noticed a rifle in plain view in the passenger seat with a magazine in it (TR. 21). Upon viewing the rifle, Officer Kennedy yelled out the presence of a gun to Officer Cabral and asked Riley to step out of the vehicle (TR. 34-35). Riley complied (TR. 34). After Riley exited the vehicle, Officer Kennedy noticed the butt of the rifle was on the floorboard of the vehicle and was resting up at an angle on the seat (TR. 35). Officer Cabral said the barrel was sticking up, leaning against the passenger seat and middle console (TR. 27).

Officer Kennedy removed Riley from the vehicle, and placed him in handcuffs, and put him in the front seat of Officer Kennedy's cruiser (TR. 21, 35). Officer Cabral gave Riley the *Miranda* warnings from memory (TR. 22). Officer Cabral said he did not utilize the *Miranda* rights advisory form in his car (TR. 23). Officer Cabral said he stated to Riley that Riley had the "right to remain silent and anything you say can and will be used against you" (TR. 25). Officer Cabral also said he stated to Riley, "you have the right to an attorney. If you can not afford one, one will be present–or one will be offered to you. [U]nderstanding your rights, are you going to talk to me today?" (TR. 25). Riley told Officer Cabral he understood his *Miranda* warnings (TR. 25). Officer Cabral said he gave Riley the *Miranda* warnings in a calm voice and Riley was cooperative (TR. 16).

Officer Cabral said that on June 7, 2007, the cruiser camera on his vehicle was not working and did not know if the camera was recording during the recitation of Riley's *Miranda* rights (TR. 22). Officer Kennedy said the video recording device on Officer Kennedy's cruiser was working on June 7, 2007, however, the way the cruisers were positioned to Riley's vehicle, the cameras didn't record anything (TR. 38). The videotape was not preserved (TR. 39). Officer Kennedy said it was up to his supervisors to determine if the evidence was of value to be preserved (TR. 39).

After Officer Cabral gave Riley the *Miranda* warnings, Officer Cabral asked Riley if the officers could search the red Monte Carlo (TR. 36). Officers Kennedy and Cabral said Riley consented to a search (TR. 14, 36). Officer Cabral secured and cleared the loaded rifle in the right passenger seat before searching the rest of the vehicle (TR. 15). Officers Kennedy and Cabral searched the vehicle and found a shotgun and multiple double-edged knives in the back seat area on the floorboard of the driver's side (TR. 14, 36). Officer Cabral asked Riley what was he doing with the guns (TR. 18). Riley said he was taking the guns to a friend's house because they were going rabbit hunting (TR. 18).

Officers Cabral and Kennedy completed a data check on Riley (TR. 17). The data check revealed Riley had a suspended license (TR. 17). Officer Kennedy obtained the vehicle title and registration and found that the vehicle was not registered to Riley (TR. 25-6). Officer Kennedy called investigators for advice as to whether Riley should be brought to central booking to be interviewed (TR. 36). Officer Kennedy was advised by investigators to arrest Riley (TR. 37). Riley was arrested and booked for driving under suspension (DUS), reckless driving, unlawful transport of a firearm, and carrying a concealed weapon (TR. 17).

Officer Loftus has been a police officer for seven years and has been in the criminal investigation bureau for approximately one year. Officer Loftus was assigned to the criminal investigation bureau of the southeast precinct on June 7th, 2007 by Sergeant Reyes (TR. 40). Officer Loftus said he was assigned to interview the driver of the vehicle, Jason Riley, who was brought into Omaha Police headquarters by UPB officers concerning firearms in a vehicle (TR. 41, 43). Officer Loftus said he administered *Miranda* rights to Riley from the Omaha Police Department rights advisory form (TR. 42). Officer Loftus interviewed Riley for approximately 40 minutes (TR. 43). Riley said to Officer Loftus a friend named Dundee brought the weapons to Riley's house and Riley was to take the weapons to another friend named Havenbrook for a rabbit hunting trip (TR. 45-6). Officer Loftus said Riley understood his *Miranda* rights, and seemed calm and coherent during questioning (TR. 44, 46).

4

## LEGAL ANALYSIS

Riley claims the initial stop of the vehicle he was driving was illegal and not supported by probable cause.  "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle."  *United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 646 (8th Cir. 1999) **citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977).  Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that an individual has committed or was committing a crime.  *Kuehl v. Burris*, 173 F.3d 646, 650 (8th Cir. 1999).  The courts must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances."  *United States v. Washington*, 109 F.3d 459, 465 (8th Cir.1997).  Whether a traffic stop is pretextual is measured against a standard of "objective reasonableness."  *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir. 1990), **cert**. **denied**, 502 U.S. 962 (1991) (**quoting** *Scott v. United States*, 436 U.S. 128, 138 (1978)).  "Even assuming [the police officer] was looking for [the defendant], it would be "objectively reasonable" to pull over a vehicle which was engaging in a traffic offense."  *United States v. Miller*, 20 F.3d 926, 929 (8th Cir. 1994).

Furthermore, police officers may make a valid investigatory stop of a vehicle based on reasonable suspicion that the occupants of the vehicle are engaged in criminal activity.  **See** *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968); *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999).  The reasonable suspicion necessary to justify an investigatory stop must include "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry*, 392 U.S. at 21; **see** *Navarrete-Barron*, 192 F.3d at 790.  "After making a valid *Terry* stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time."  *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999).

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation.  *$404,905.00,* 182 F.3d at 647; **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether

5

the police officer may search the vehicle.  **$404,905.00,** 182 F.3d at 647; **U.S. v. Allegree,** 175 F.3d 648, 650 (8th Cir. 1999).  The police officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers.  **$404,905.00,** 182 F.3d at 647; **Allegree,** 175 F.3d at 650-51.

When an investigatory stop is based upon an anonymous tip, the tip must be given weight based on its indicia of reliability as corroborated by independent police work.  **Alabama v. White**, 496 U.S. 325, 329-30 (1990).  However, an anonymous tip alone may be sufficient for reasonable suspicion based on the totality of the circumstances depending on the degree of reliability.  **See United States v. McBride**, 801 F.2d 1045, 1047 (8th Cir. 1986).

Officer Cabral had sufficient information for the justification of the initial stop.  Officers Cabral and Kennedy were notified by radio dispatch that a vehicle was driving recklessly in the area of 27th and Poppleton (TR. 4-5,TR. 32).  Officers Cabral and Kennedy corroborated the complaints with reports from witnesses and tire marks on the street (TR. 32-3).  Shortly after, Officer Cabral observed a vehicle matching the description given by witnesses traveling at an excessive speed (TR. 8).  Riley's reckless driving was enough to justify the stop.  However, absent the speeding, the officers would have been justified to stop Riley to investigate the complaints received earlier that evening.

Riley further argues the officers did not develop further reasonable articulable suspicions to justify Riley's continued detention which resulted in a *de facto* arrest without probable cause.  The court disagrees.  When the officers approached the vehicle, they saw a loaded rifle with a magazine in it (TR. 21).  Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  **Minnesota v. Dickerson**, 508 U.S. 366, 375 (1993); **United States v. Beatty**, 170 F.3d 811, 814 (8th Cir. 1999).  The officers were lawful in the seizure of the weapon and reasonable in the detention of Riley in order to investigate suspicious criminal activity.

6

Riley argues he did not give a valid consent for officers to search the vehicle. "A search may be constitutionally valid either where it is supported by a reasonable suspicion or by valid consent." **United States v. Morris**, 910 F. Supp. 1428, 1446 (N.D. Iowa 1995) (internal citations omitted). "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." *Id.* (internal citations omitted). The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." **Ohio v. Robinette,** 519 U.S. 33, 40 (1996). Some characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. **United States v. Hathcock**, 103 F.3d 715, 719-20 (8th Cir.), **cert. denied**,117 S. Ct. 2528 (1997). The court can also look at the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual stood by silently while the search occurred. *Id.* The court finds Riley's consent to have been voluntarily given.

After Officers Cabral and Kennedy observed a shotgun in the front seat, Riley was removed from the vehicle, taken into custody, and immediately advised of his rights (TR. 21-22, 35). After being advised of his rights, Riley consented to a search of the vehicle (TR 14). There is no evidence Officers Cabral or Kennedy coerced or intimidated Riley. Additionally, there is no evidence Riley did not understand his *Miranda* rights (TR. 14). While Officer Cabral gave Riley the *Miranda* warnings from memory, there is no evidence that Officer Cabral did not accurately advise Riley of his rights. Officer Cabral said he stated to the driver that driver had the "right to remain silent and anything you say can and will be used against you" (TR. 25). Officer Cabral said he stated to the driver, "you have the right to an attorney. If you can not afford one, one will be present–or one will be offered to you. [U]nderstanding your rights, are you going to talk to me today?" (TR. 25).

The Supreme Court held in **California v. Prysock**, 453 U.S. 355 (1981) that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a

7

criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." ***Prysock***, 453 U.S. at 359. The Court advised reviewing courts need not examine ***Miranda*** warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by Miranda." ***Prysock***, 453 U.S. at 361. ***Miranda*** warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." ***Michigan v. Tucker***, 417 U.S. 433, 444 (1974). If the advice, in its totality, touches all the bases required by ***Miranda,*** there is no basis for suppression. ***Duckworth v. Eagan***, 492 U.S. 195, 203 (1989). The weapons and ammunition retrieved during the search of the vehicle were found after Riley's valid consent.

Additionally, Officer Kennedy conducted a search of the vehicle shortly after arrest (TR 14-15). Such searches incident to arrest are *per se* reasonable. ***Chimel v. California***, 395 U.S. 752 (1969); ***United States v. Robinson***, 414 U.S. 218 (1973). "The arrest itself justified the search of [the defendant's] person . . . and of the passenger compartment of his automobile." ***United States v. Dawdy***, 46 F.3d 1427, 1430 (8th Cir.), **cert. denied**, 516 U.S. 872 (1995) (citations omitted). Officer Kennedy's search was reasonable and permissible because it was incident to Riley's arrest.

Riley also challenges the admissibility of his statements at Central Police Headquarters which he made to Officer Loftus. The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. ***Mincey v. Arizona***, 437 U.S. 385 (1978); ***Colorado v. Connelly***, 479 U.S. 157 (1986); ***Schneckloth v. Bustamonte***, 412 U.S. 218 (1973). Coercive police conduct will render a confession inadmissible. ***Blackburn v. Alabama***, 361 U.S. 199 (1960). In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne. ***United States v. Wilson***, 787 F.2d 375, 380-81 (8th Cir.), **cert. denied**, 479 U.S. 857 (1986). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. ***Schneckloth***, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding

that the confession is not voluntary and violates the accused's due process rights. *Connelly*, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977). The court finds Riley's statements made at Central Police Headquarters to have been voluntarily made and such statements are admissible as evidence against him.

Finally, Riley argues his statements to police officers should be suppressed as the fruit of an unlawful arrest. The court finds the search of the vehicle was incident to arrest after a valid traffic stop, reasonable detention, and valid consent. Any statements made by Riley were voluntary after being advised of his *Miranda* rights. The evidence found in the Riley's vehicle along with any statements Riley made are admissible in the trial of this matter. Riley's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LYLE E. STROM that:**

Jason M. Riley's motion to suppress (Filing No. 12) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 3rd day of October, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge